**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Josephy Alberto VENTURA, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 27, 2008.

Filed May 26, 2009.

---

William Costopoulos, Lemoyne, for appellant.

Lance T. Marshall, Asst. Dist. Atty., Bellefonte, for the Com., appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS and DONOHUE, JJ.

OPINION BY DONOHUE, J.:

¶ 1 Josephy Alberto Ventura ("Ventura") appeals from the judgment of sentence entered on November 13, 2007, following his conviction for third-degree murder, 18 Pa.C.S.A. § 2502(c). The conviction stemmed from an incident on February 17, 2006, at Club Love, a bar in State College, Pennsylvania, in which Michael Donahue ("Victim") died following a single stab to the heart. After careful consideration, we affirm.

¶ 2 The facts and procedural history of this case are as follows. On February 17, 2006, friends of Ventura and friends of Victim engaged in a verbal argument concerning Ventura's girlfriend at the bar. The altercation initially ended, but then erupted again. Victim stepped in and was stabbed and died later at the hospital. Bar security, campus police, and State College police interceded, and Ventura was transported to the police station. Upon arrival at the station, police briefly searched Ventura, but did not uncover anything. Later while monitoring Ventura in his holding cell via video surveillance, police witnessed him trying to put something in his jacket. Police conducted a second search and recovered a knife inside the lining of one of Ventura's jacket pockets. Police then administered *Miranda*[1] warnings and Ventura signed a form waiving his *Miranda* rights before giving a statement to police.

¶ 3 Ventura was charged with first- and third-degree murder of Victim. Following a two day trial, a jury found him guilty of third-degree murder. On November 13, 2007, the trial court sentenced Ventura to 20 to 40 years of imprisonment. Ventura filed post-sentence motions, which were denied following a hearing. He then filed a notice of appeal and complied with the trial court's directive to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed an opinion pursuant to Pa. R.A.P. 1925(a) in response. This timely appeal followed, in which Ventura presents the following issues for our review:

1. WHETHER THE COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR OF LAW IN IMPOSING THE STATUTORY MAXIMUM SENTENCE ON [VENTURA] BY FOCUSING EXCLUSIVELY ON THE SEVERITY OF THE OFFENSE TO THE EXCLUSION OF MITIGATING AND OTHER FACTORS AND BY FAILING TO FASHION AN INDIVIDUALIZED SENTENCE THAT TOOK INTO ACCOUNT THE PUBLIC'S NEED FOR PROTECTION AND THE REHABILITATIVE NEEDS OF [VENTURA], WHICH RESULTED IN A MANIFESTLY EXCESSIVE SENTENCE?

2. WHETHER THE COURT FAILED TO ARTICULATE PROPER AND SUFFICIENT REASONS ON THE RECORD IN

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

SUPPORT OF ITS IMPOSITION OF THE STATUTORY MAXIMUM SENTENCE ON [VENTURA]?

3. WHETHER THE COURT ERRED IN REFUSING TO SUPPRESS [VENTURA'S] STATEMENTS WHICH WERE OBTAINED IN VIOLATION OF THE STATE AND FEDERAL CONSTITU-TIONS BECAUSE HE WAS TOO INTOXICATED TO KNOWING-LY, VOLUNTARILY AND IN-TELLIGENTLY WAIVE HIS RIGHTS AND POLICE FAILED TO TIMELY AND PROPERLY ADMINISTER THE MIRANDA WARNINGS TO HIM?

4. WHETHER THE COURT ERRED IN REFUSING TO SUPPRESS EVIDENCE SEIZED FROM [VENTURA'S] JACKET WITH-OUT A SEARCH WARRANT AND HIS BLOOD WHICH EVIDENCE WAS OBTAINED IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS?

5. WHETHER THE COURT ERRED IN PRECLUDING THE EXPERT WITNESS TESTIMONY OF TWO DOCTORS, WHOSE OPINIONS WERE ESSENTIAL TO ESTAB-LISHING [VENTURA'S] AFFIR-MATIVE DEFENSE OF SELF-DEFENSE?

6. WHETHER THE EVIDENCE IS INSUFFICIENT TO SUSTAIN [VENTURA'S] CONVICTION FOR THIRD–DEGREE MURDER?

Appellant's Brief at 7.

¶ 4 Ventura's first two issues on appeal raise challenges to the discretion-ary aspects of his sentence; thus, we will examine them together. As required by Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), Ventura has included a separate statement of reasons for our review of the discretionary aspects of his sentence in his appellate brief. This Court may only reach the merits of an appeal challenging the discretionary aspects of a sentence, however, if it also appears that a substan-tial question exists as to whether the sen-tence imposed is appropriate under the Sentencing Code. *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa.Super.2001). A sub-stantial question will be found where the defendant advances a colorable argument that the sentence imposed is either incon-sistent with a specific provision of the Code or is contrary to the fundamental norms underlying the sentencing process. *Id.*

¶ 5 Ventura contends that the trial court failed to state adequate reasons for the imposition of his sentence on the record. Appellant's Brief at 53. This contention raises a substantial issue. *Commonwealth v. Whitmore*, 860 A.2d 1032, 1036 (Pa.Su-per.2004), *reversed on other grounds*, 590 Pa. 376, 912 A.2d 827 (2006). Ventura further asserts that the trial court imposed his sentence based solely on the serious-ness of the offense and failed to consider all relevant factors, which has also been found to raise a substantial question. *Commonwealth v. Boyer*, 856 A.2d 149, 152 (Pa.Super.2004). Accordingly, we proceed to consider the merits of these claims.[2]

¶ 6 We review a sentencing court's determination for an abuse of discretion.

---

**2.** Ventura also asserts that the trial court failed to consider two mitigating factors he presented, his intoxication at the time of the incident and his lack of violent criminal histo-ry, when fashioning his sentence. Appellant's Brief at 47–49. "[T]his Court has held on numerous occasions that a claim of inade-quate consideration of mitigating factors does not raise a substantial question for our re-view." *Commonwealth v. Matroni*, 923 A.2d 444, 455 (Pa.Super.2007) (*citing Common-wealth v. Bullock*, 868 A.2d 516, 529 (Pa.Su-

*Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957 (2007). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Hanson,* 856 A.2d 1254, 1260 (Pa.Super.2004).

¶ 7 We are also confined by the statutory mandates of 42 Pa.C.S.A. § 9781(c), which states:

> **(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
>> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>>
>> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>>
>> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c).

¶ 8 We begin with an examination of the sentence imposed in light of the appli-

cable sentencing guidelines.[3] According to the pre-sentence report presented to the trial court, the standard range sentence guideline for the third-degree murder charge was 168 to 240 months. *See* Pre-sentence Investigation, at 2. Ventura was sentenced to 240 months to 480 months of imprisonment, and thus, the minimum sentence imposed was within the standard guideline range. Because Ventura's sentence was within the standard range, Ventura must demonstrate that the "application of the guidelines [was] clearly unreasonable" pursuant to 42 Pa.C.S.A. § 9781(c)(2).

¶ 9 Our Supreme Court in *Commonwealth v. Walls,* 592 Pa. 557, 568–9, 926 A.2d 957, 964 (2007) determined that a sentence can be deemed unreasonable after a review of the trial court's application of the factors contained in 42 Pa.C.S.A. §§ 9721(b) and 9781(d). Section 9721(b) states:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant [as well as] any guidelines for sentencing[.]

42 Pa.C.S.A. § 9721(b). Section 9781(d) provides that when we review the record, we must have regard for:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) [t]he opportunity of the sentencing court to observe

---

per.2005)). Thus, we will not consider this aspect of Ventura's claim.

**3.** Here, Ventura does not set forth the applicable sentence guidelines or where his sentence fell in relation to them. We have re-

cently held that such omission is not fatal when the appellant otherwise presents a substantial question for our review. *See Commonwealth v. Flowers,* 950 A.2d 330, 332 (Pa.Super.2008).

the defendant, including any presentence investigation[;] (3) [t]he findings upon which the sentence was based[;] (4) [t]he guidelines promulgated by the [sentencing] commission.

42 Pa.C.S.A. § 9781(d).

¶ 10 Ventura claims that the sentencing court failed to consider his rehabilitative needs and the protection of the public under Section 9721(b), consider the sentencing factors in Section 9781(d), or to state its reasoning on the record. Here, the trial court had the benefit of a pre-sentence report. Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. *Commonwealth v. Devers*, 519 Pa. 88, 101–102, 546 A.2d 12, 18–19 (1988). In discussing *Devers*, our Court has explained:

In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sen-

tencing report; thus properly considering and weighing all relevant factors. *Commonwealth v. Fowler*, 893 A.2d 758, 766–7 (Pa.Super.2006) (citations omitted).

¶ 11 In this case, the trial court stated its reasons for imposition of sentence at the sentencing hearing:

The Court has had the benefit of reviewing information in the pre-sentence investigative report together with the memoranda that [defense counsel] referenced. There have been a wealth of letters from relatives of Mr. Ventura and from the Donahue family and relatives and friends of the Donahue family and the Court has had an opportunity to review all of those.

The Court is intimately familiar with [the] circumstances of the case because it was only just recently tried and believes that an appropriate sentence under the circumstances is the sentence that the District Attorney has requested [...].

N.T., 11/13/2007, at 32–33.

¶ 12 Based upon our abuse of discretion standard, "[w]e can find no reason to place this case outside of the standard [guideline] range, which is presumptively where a defendant should be sentenced." *Fowler*, 893 A.2d at 767. Since the trial court clearly relied upon the presentence report, and the sentence imposed was neither outside the applicable guidelines nor unreasonable, we find that the trial court did not abuse its discretion and, thus, there is no merit to Ventura's sentencing claims.

¶ 13 In his third issue presented, Ventura argues that the trial court erred in refusing to suppress statements he made to police. His argument is twofold. First, Ventura contends that he made statements to police while being transported to the police station and after police discovered the knife in his possession, but before *Mi-*

*randa* warnings were administered, thereby warranting suppression. Appellant's Brief at 58–59. Second, Ventura argues that he was too intoxicated to knowingly waive his *Miranda* rights, thus requiring suppression of subsequent statements made to police. *Id.* at 54.

¶ 14 Our standard of review of a suppression ruling is as follows:

> We determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Pruitt*, 597 Pa. 307, 325, 951 A.2d 307, 317 (2008). Moreover, "[i]n reviewing [a] suppression claim, we are bound by the record as created at the suppression hearing. Accordingly, we cannot rely on the facts that were not developed until trial." *Commonwealth v. Days*, 718 A.2d 797, 802, n. 8 (Pa.Super.1998).

¶ 15 We first look at Ventura's claim that *Miranda* rights were belatedly administered. Specifically, Ventura challenges the denial of suppression of statements he made to Officer Brian Foster ("Officer Foster"), the officer first to arrive on the scene, and to Officer Mark Rhodes ("Officer Rhodes"), the officer who transported him to the police station. Ventura told Officers Foster and Rhodes that he took offense to someone striking his pregnant girlfriend. Ventura also alleges that his statement to investigating

detective, Ralph W. Ralston ("Detective Ralston"), "that the knife was his and that he used it to do some work on his car with the gas filter and that he had a receipt for the local Sunoco station" should likewise have been suppressed. Appellant's Brief at 15.

¶ 16 Ventura contends that all of these statements required suppression because he was in police custody, but had not yet been advised of his *Miranda* rights. In this regard, our Supreme Court in *Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394 (2001) stated:

> As a general rule, the prosecution may not use statements, whether inculpatory or exculpatory, stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602.
>
> 'Interrogation' is defined as 'questioning initiated by law enforcement officials.' *Id.* at 444, 86 S.Ct. 1602. In *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the United States Supreme Court extended the definition to the 'functional equivalent' of express questioning, stating:
>
> > We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than

the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response. *Id.* at 300–01, 100 S.Ct. 1682.

*DeJesus,* 567 Pa. at 428–29, 787 A.2d at 401–02, *abrogated on other grounds, Commonwealth v. Cousar,* 593 Pa. 204, 928 A.2d 1025 (2007).

¶ 17 In this case, the suppression court found that Ventura was not being interrogated at the time the challenged statements were offered and that suppression was unwarranted. Based on the record before us, we agree.

¶ 18 All three of the police officers who had contact with Ventura prior to the issuance of *Miranda* warnings testified that Ventura volunteered the statements without any prompting. At the suppression hearing, Officer Foster testified that he did not ask Ventura any questions when he arrived on the scene, but that Ventura volunteered, "He punched my girl. He punched my wife. She's pregnant." N.T., 8/25/2006, at 9. Officer Rhodes testified that while transporting Ventura to the police station, he only asked Ventura his name and requested that he cooperate with police until they could "sort things out." *Id.* at 23. According to Officer Rhodes, Ventura offered unsolicited statements in the police car and while he was being escorted into the police station saying that he took offense to someone hitting his girlfriend. *Id.* at 24–25. Finally, Detective Ralston testified at the suppression hearing that Ventura volunteered the information that the knife was his when police uncovered it in his presence.[4] *Id.* at 39–40.

¶ 19 We find that this evidence was sufficient to show that although Ventura was in police custody, he was not being interrogated when he offered statements to police. Therefore, *Miranda* warnings were not required. Accordingly, the trial court's denial of suppression of all of the foregoing statements was proper.

¶ 20 Regarding the second aspect of Ventura's third issue, the law in Pennsylvania pertaining to the waiver of *Miranda* warnings while intoxicated is well-settled:

> The fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his

---

**4.** Ventura points to trial testimony to bolster his claim that he was subject to interrogation when he claimed ownership of the knife. As noted, however, we may only consider the record created at the suppression hearing. *See Days, supra.* Moreover, upon review of the trial transcript, the other investigating detective, Steve Bosak ("Detective Bosak") testified that Ventura witnessed removal of the knife and, without prompting, Ventura stated that the knife was his and he had used it to work on his car the previous day. N.T., 9/10/2007, at 318–321. Specifically, Detective Bosak testified that "he was just speaking without being questioned" and that Detective Ralston interrupted, read Ventura his *Miranda* rights, and then Ventura continued. *Id.* at 321.

statement to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but goes only to the weight to be accorded to it.

*Commonwealth v. Adams,* 385 Pa.Super. 513, 561 A.2d 793, 795 (1989) (citation omitted). "[W]hen evidence of impairment is present, it is for the suppression court to decide whether the Commonwealth has established by a preponderance of the evidence that the suspect nonetheless had sufficient cognitive awareness to understand the *Miranda* warnings and to choose to waive his rights." [5] *Commonwealth v. Britcher,* 386 Pa.Super. 515, 563 A.2d 502, 507 (1989) (citations omitted).

¶ 21 Here, the following evidence was adduced at the suppression hearing. Officer Foster testified that he did not observe indications that Ventura was inebriated when he first arrived on the scene. N.T., 8/25/2006, at 13. Although he smelled the odor of alcohol on Ventura and "it was apparent that [Ventura] had been drinking," Officer Foster testified that he did not witness Ventura slur his speech, stagger or stumble while walking, or make "any kind of swaying or motions which would lead [him] to believe that he was intoxicated." *Id.* at 14–17. Officer Rhodes testified that he recalled "smelling the odor of alcohol in the rear of the cruiser [while] transporting [Ventura] to the station, but nothing that would [...] characterize him as being intoxicated." *Id.* at 29. Detective Ralston interviewed Ventura at the police station and testified that Ventura was not intoxicated, stating as follows:

I used to be an instructor for standardized field sobriety testing, so I'm aware of the characteristics of intoxicated individuals, and I could tell he had been drinking. His eyes were maybe a little bloodshot and watery. His speech was not slurred. I could smell the odor of an alcoholic beverage. I did not have any concerns about his condition, as far as being intoxicated, whether or not he would need any kind of attention or—medical attention, things of that nature—but I was concerned about his ability to answer my questions properly.

\* \* \*

[ ] I asked him if he knew the date and time—or date and day—and he did. [...] And based upon the answers to other questions and his—I'd like to say willingness, I guess, to cooperate. [...] I didn't have any concern about his ability to comprehend the process.

\* \* \*

[H]e was very cautious, and he said this—he didn't want to incriminate himself, and he used that word several times, incriminate himself. And normally, when you're dealing with somebody that's really impaired or intoxicated, you're not getting a conversation like that. It's more of a—you know, communications that are not understandable, slurred, things of that nature. He did not exhibit any of that.

*Id.* at 41–43.

¶ 22 We find that based on the foregoing, the trial court did not err in determining that Ventura knowingly waived his *Miranda* rights. The facts of record establish that Ventura "had sufficient mental capacity at the time of giving his statement to know what he was saying." *Adams,* 561 A.2d at 795. Testimony revealed that Ventura was cognizant of time

---

5. Ventura relies on defense expert testimony from trial to support the claim that he was too intoxicated to knowingly waive his *Mi-* randa rights. Again, we may only consider the evidence presented at the suppression hearing. *See Days, supra.*

and place, had no difficulty walking, did not slur his speech, and, most tellingly, demonstrated that he was capable of making decisions when he chose not to answer certain questions because he feared incrimination. Accordingly, per our standard of review, we will not disturb the suppression court's credibility determinations and Ventura's third issue on appeal fails.

■ ¶ 23 For his fourth issue on appeal, Ventura claims that the trial court erred by denying suppression of the bloody[6] knife seized from his jacket because police acted without a search warrant. He contends that his statements regarding ownership of the knife were illegally obtained and thus "tainted the subsequent warrantless search of the knife from his jacket." Appellant's Brief at 60.

■ ¶ 24 This argument fails because the law in Pennsylvania is well-settled:

[A]n arresting officer may, without a warrant, search a person validly arrested, and the constitutionality of a search incident to a valid arrest does not depend upon whether there is any indication that the person arrested possesses weapons or evidence as the fact of a lawful arrest, standing alone, authorizes a search.

*Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701, 710 (1982) (citation omitted).

■ ¶ 25 It has been previously determined that a search of a person conducted at a later time (rather than contemporaneously with the actual arrest) is likewise valid. In *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A.2d 249 (1966) our Supreme Court found that the patting of defendant's clothes at the scene of his arrest and subsequent emptying of his pockets later at the police station constituted two valid searches even though made without a search warrant, as both searches were incident to a lawful arrest. Specifically, the *Ellsworth* Court found, "[t]he mere fact that Ellsworth had been preliminarily searched before being escorted to the police station did not eliminate the possibility that he might still have a potentiality of danger due to the possession of a concealed knife or other weapons which might very easily have been overlooked upon the officers' initial and hasty search." *Id.*, 421 Pa. at 182, 218 A.2d at 256. Our Court has found similarly. *See Commonwealth v. Querubin*, 211 Pa.Super. 360, 236 A.2d 538 (1967) (determining it reasonable and efficient police procedure to conduct a search of a person at the police station within an hour or two after arrest).

¶ 26 Ventura notes that he was not wearing the jacket at the time police conducted the search. Appellant's Brief, at 60. However, even in this regard, our Supreme Court has stated (in a case with a factually similar scenario):

The taking of the trench coat, which [the arrestee] was wearing at the time of his arrest, constituted a search incident to a lawful arrest. The mere fact that the seizure of the coat was not contemporaneous with the seizure of the person of the appellant, but rather occurred after he had been removed to the place of detention, does not prevent the seizure from being considered incident to the arrest.

*Commonwealth v. Bundy*, 458 Pa. 240, 245, 328 A.2d 517, 520 (1974).

¶ 27 Based on the foregoing, we cannot agree that the police's failure to obtain a search warrant was inappropriate, and accordingly Ventura's fourth issue lacks merit.

---

6. Blood samples were later analyzed for DNA and matched both Victim and Ventura.

¶ 28 In the fifth issue presented, Ventura contends that the trial court erred in precluding the testimony of two expert defense witnesses, Dr. Stanley Schneider ("Dr. Schneider"), a forensic psychologist, and Dr. Jonathan Arden ("Dr. Arden"), a forensic pathologist, because their opinions were essential to Ventura's claim of self-defense. Appellant's Brief at 61.

¶ 29 Our standard of review of a trial court's decision to preclude expert testimony is as follows:

Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court. We may reverse only if we find an abuse of discretion or error of law.

*Weiner v. Fisher*, 871 A.2d 1283, 1285 (Pa.Super.2005) (citation omitted).

¶ 30 A court may allow "scientific, technical or other specialized knowledge beyond that possessed by a layperson [if it] will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." Pa.R.E. 702. However, relevant "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

¶ 31 For ease of discussion we examine the arguments pertaining to each expert separately. First, Ventura claims that he "wanted to call Dr. Schneider to give the [...] jury an insight into [Ventura's] psychological background and inform them that, in light of all the circumstances surrounding him and this case, he did not act with the intent to kill or with malice at the time in question." Appellant's Brief at 64.

Ventura asserts that Dr. Schneider's testimony regarding his background was necessary to support his claim of self-defense, because the testimony would have established that there was nothing in his history to suggest hostile behavior. *Id.* at 65.

¶ 32 The trial court found that while psychiatric testimony is admissible to show a defendant's *bona fide* belief that he was in imminent danger at the time of the crime for purposes of establishing self-defense, Dr. Schneider's report only presented Ventura's life history and his psychological issues since incarceration, rather than his state of mind at the actual time of the crime. Trial Court Opinion, 6/2/2008, at 16. Moreover, the trial court acknowledged that while psychiatric evidence of *mental disorders* is generally admissible to support a defense of diminished capacity, Dr. Schneider opined that Ventura suffered from *personality disorders* which are irrelevant to such a defense. *Id.* at 16–17. As such, the trial court precluded the testimony from trial. We agree with the trial court's assessment.

¶ 33 In *Commonwealth v. Light*, 458 Pa. 328, 334, 326 A.2d 288, 292 (1974), our Supreme Court determined that psychiatric testimony is generally admissible to support a theory of self-defense to show "the subjective element of the defendant's state of mind at the time of the occurrence." Here, in Dr. Schneider's report, aside from a bald statement that Ventura lacked specific intent when he stabbed Victim, based upon Ventura's previous personal history, there is no assessment or opinion regarding Ventura's state of mind at the time of the crime. Instead, the report more closely resembles a history of Ventura's life and his emotional state since incarceration and is not relevant for the reasons advanced by Ventura.

¶ 34 In addition, "psychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to *mental disorders* affecting the cognitive functions necessary to formulate a specific intent." *Commonwealth v. Kuzmanko,* 709 A.2d 392 (Pa.Super.1998) (emphasis added and citation omitted). "It is an extremely limited defense and psychiatric testimony is only competent 'on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Where ... it does not, it is irrelevant and hence inadmissible.'" *Id., citing Commonwealth v. Weinstein,* 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982). "Furthermore, personality disorders or schizoid or paranoid diagnoses are not relevant to a diminished capacity defense." *Id.*

¶ 35 Upon review of the report, Dr. Schneider found that Ventura suffered from "substance abuse, adjustment disorder, antisocial personality features and depressive features." As these diagnoses are personality disorders, the trial court correctly found them irrelevant and precluded them from trial.

¶ 36 We turn now to Ventura's argument pertaining to Dr. Arden. Ventura contends that Dr. Arden's testimony was necessary to buttress his claim of self-defense. Appellant's Brief at 67. He maintains that "Dr. Arden was highly critical of the autopsy report prepared by the hospital pathologist[,]" *id.* at 66, suggesting that "Dr. Arden's opinions [...] were relevant and admissible because they cast doubt on the accuracy of the depth and nature of the stab wound sustained by the victim." *Id.* at 67–68. The essence of the argument is that the autopsy was inconclusive as to whether Victim's wound was offensive or defensive and that Dr. Arden would have "assisted the [jury] to understand the evidence." *Id.* at 68. Ventura maintains that the trial court's error in precluding the aforementioned testimony requires a new trial.

¶ 37 The trial court found that Dr. Arden's report was a mere critique of the autopsy conducted in this case and did not offer a medical opinion as to whether the wound was offensive or defensive. Trial Court Opinion, 6/2/2008, at 17. Specifically, it determined that Dr. Arden failed to opine regarding the cause and manner of death or assert "with medical or scientific certainty that the conclusions drawn by the pathologist were incorrect." *Id.* The trial court found Dr. Arden's testimony would only confuse the jury. *Id.*

¶ 38 Upon review of the record, we agree. At trial, the pathologist who conducted the autopsy testified that the knife wound was compromised by hospital staff when Victim arrived at the hospital. He testified that "[t]hey took a chest tube [...] and they passed it through the wound to try to save the patient's life." N.T., 9/1/0/2007, at 67. As such, Dr. Arden's proffered testimony would have only challenged the way in which the autopsy was conducted, but would not have assisted the jury in understanding the evidence, thus, it lacked probative value. Dr. Arden did not opine that Victim's injuries were consistent with Ventura's theory of self-defense. In his report, he simply criticizes the manner in which the autopsy was conducted, without making any of his own scientific conclusions. Moreover, even assuming the evidence was relevant, we conclude that the trial court did not err in precluding Dr. Arden's testimony because it was likely to confuse the issues or mislead the jury. *See* Pa.R.E. 403.

¶ 39 Further, we are mindful that "an evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Hart v. W.H. Stewart, Inc.,* 523 Pa. 13, 564 A.2d

1250 (1989). As will be discussed *infra*, there was sufficient evidence to support Ventura's conviction for third-degree murder and to disprove his claim of self-defense. Thus, Ventura's fifth issue lacks merit.

¶ 40 Finally, in his sixth issue on appeal, Ventura contends that the evidence at trial was insufficient to support his conviction for third-degree murder because the Commonwealth failed to disprove his claim of imperfect self-defense beyond a reasonable doubt. Appellant's Brief at 69. He claims that he "reasonably or even unreasonably believed he was in danger of serious bodily injury when the drunk, imposing [Victim] approached him menacingly and shoved him, [Ventura] was free of provocation, and he could not possibly have retreated with complete safety." *Id.* at 74. Ventura asserts that his "reflexive response, though perhaps unreasonable, was understandable and most certainly was not malicious," thus entitling him to a lesser conviction for "unreasonable belief voluntary manslaughter" under 18 Pa. C.S.A. § 2503(b). *Id.* at 74–75.

¶ 41 Our standard of review for sufficiency of the evidence claims is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bruce*, 207 Pa.Super. 4, 916 A.2d 657, 661 (2007) (citations omitted).

¶ 42 "Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Tielsch*, 934 A.2d 81, 94 (Pa.Super.2007) (citation omitted). "Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." *Commonwealth v. Hardy*, 918 A.2d 766, 774 (Pa.Super.2007). "Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Gooding*, 818 A.2d 546, 550 (Pa.Super.2003).

¶ 43 Voluntary manslaughter pursuant to 18 Pa.C.S.A. § 2503(b) is defined as:

> **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would

justify the killing under Chapter 5[7] of this title, but his belief is unreasonable. 18 Pa.C.S.A. § 2503(b) (footnote added). "[T]he elements necessary to establish unreasonable belief voluntary manslaughter, which is sometimes loosely referred to as [']imperfect self-defense[']" require proof of "an unreasonable belief rather than a reasonable belief that deadly force was required to save the actor's life." *Commonwealth v. Tilley*, 528 Pa. 125, 141, 595 A.2d 575, 582 (1991). "All other principles of justification under 18 Pa.C.S. § 505 must [still be met in order to establish] unreasonable belief voluntary manslaughter." *Id.*

¶ 44 Section 505 sets forth the elements of self-defense:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a).

¶ 45 "When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." *Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa.Super.2008). The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *Commonwealth v. McClendon*, 874 A.2d 1223, 1230 (Pa.Super.2005). The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa.Super.2000).

¶ 46 Based on an examination of the record, the Commonwealth proved that Ventura provoked or continued the use of force against Victim. Multiple witnesses testified that Victim was not aggressive, and actually stepped in to dissipate a dispute centered around Ventura's girlfriend. Testimony at trial indicated that at the time of the altercation, Ventura was the initial aggressor, yelling profanities and asking what had happened to his girlfriend. N.T., 9/10/2007, at 92–93, 118. Victim defused the situation initially. *Id.* at 118. After one of Ventura's friends punched one of Victim's friends, Victim stepped forward to protect his friend by separating the groups. *Id.* at 119, 152, 156. Testimony showed that Victim was calm and not aggressive or angry during this time period. *Id.,* at 87–88, 134, 221. There was likewise no evidence to suggest that Victim was armed. As such, the Commonwealth proved that Ventura was the aggressor.

¶ 47 Moreover, testimony at trial established that after Ventura stabbed Victim, Ventura "backed away." *Id.* at 154, 161–162. Ventura admitted as such. N.T., 9/11/2007, at 510. The use of deadly force, cannot be used where there is an avenue of retreat, if the defendant knows the avenue of retreat is available. *Commonwealth v. Palmer*, 467 Pa. 476, 359 A.2d 375 (1976), *distinguished on other grounds, Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220 (2005). The law does not require an accused to elect an avenue of retreat where a reasonably pru-

7. Chapter 5 of the Crimes Code sets forth the general principles pertaining to justification.

dent person would conclude that such a decision would increase his or her exposure to the threatened harm. *Commonwealth v. Bayard,* 453 Pa. 506, 309 A.2d 579 (1973). The testimony at trial supports the proposition that retreat was possible and there was no evidence that Ventura's retreat would have exposed him to additional harm. Thus, the Commonwealth disproved Ventura's self-defense claim.

¶ 48 Finally, we find that there was sufficient evidence to prove that Ventura committed third-degree murder. Third-degree murder requires a showing of malice which can be inferred from the use of a deadly weapon on a vital part of the victim's body. At trial, evidence from the autopsy showed that Victim died from a penetrating stab wound to the heart. N.T., 9/10/2007, at 65. There is no dispute that Ventura stabbed Victim with a knife; his testimony confirms as such. *Id.,* at 510–511. As such, there was sufficient evidence to support Ventura's third-degree conviction. Accordingly, Ventura's final issue on appeal fails.

¶ 49 Judgment of sentence affirmed.