J-S08005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KHALIL BURNETT, | |
| Appellant | No. 2662 EDA 2017 |

Appeal from the PCRA Order Entered August 11, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-46-CR-0003222-2009

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 03, 2019**

Appellant, Khalil Burnett, appeals from the order denying his timely petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we vacate the PCRA court's order and remand for further proceedings consistent with this memorandum.

During Appellant's direct appeal, we summarized the facts adduced at his trial as follows:

> Ms. Rosemarie Schrader testified that she has resided on the 7300 block of Garman Street in the City of Philadelphia all of her life.  She described her home as being in the middle of a typical residential block of row homes with an elevated open front porch. On the evening of October 4, 2008, while she was sitting alone on her porch going through her mail between the hours of 8:00 and 9:00 p.m., she heard "a cluster [of] what I thought was fireworks."  She looked up at the sound and saw two "kids" in

_____

[*] Former Justice specially assigned to the Superior Court.

white T-shirts, coming from her left, running down the middle of Garman Street, away from the direction of the "fireworks," and turn right onto Berbro Street at the end of the block. She then looked in the opposite direction to where she had heard the noises coming from. She saw a taller "kid," wearing a dark "Dickies type uniform," standing alone very near a street light diagonally across the street from her. He was yelling "Go ahead and run [ ... ] pussies, pussy, something like that." She also described him as standing with his hand "outstretched" towards Bialy Street, at the other end of the block, when she "saw a flash from his right hand which she immediately recognized it as a 'gunshot.'" This person then ran in the same direction as the other two and also turned right onto Berbro Street.

Ms. Schrader testified that, although she did not see the gun, she did see the distinct flash of a gun and heard the sound of its discharge. After seeing the flash, she then looked further up the block towards Bialy [Street] where she saw "a shadow, like somebody was running." She remembered "they were towards the corner…. It was more towards [the] corner."

Shortly afterwards she saw a dark-colored caravan come down Garman Street and then turn right onto Berbro Street. She then heard the vehicle proceed up the alley way behind her house and turn left onto Bialy Street going the wrong way on a one way street.

Detective Keith Scott testified that on the evening of October 14, 2008[,] he was a police officer on patrol in plain clothes and an unmarked police vehicle with his partner when he received a radio call, at approximately 9:00 p.m., alerting him to a shooting in the area of the 7300 block of Garman Street. He also received information regarding two black males, one wearing a white shirt and the other a dark shirt, who might have been victims of the shooting. On arriving at Berbro Street[,] he immediately observed two males matching this description go up the steps of 2602 Berbro [Street], enter the enclosed front porch and exit three to five seconds later. Identifying himself, Detective Scott approached [Appellant], whereupon [Appellant] declared he had been shot. Detective Scott testified that [Appellant] was wearing a blue uniform with the word "Dickies" on one of the pockets and that he did not observe anyone else in similar clothes.

On learning that [Appellant] did not live at the premises, Detective Scott searched the interior of the enclosed porch and discovered the butt of a gun protruding from a lawnmower bag "like somebody attempted to throw it inside the bag." On discovering the gun, Detective Scott had [Appellant] escorted to the hospital because "there was a chance that instead of being a victim [Appellant] would possibly be placed under arrest."

Police Sergeant Philip McAlorum testified that he was the first supervisor on the scene and that when he arrived at 2602 Berbro Street, Officer Scott had already detained [Appellant]. He described [Appellant] as having been "shot in his upper left leg" and wearing a "full, navy blue, what on the street would be called a Dickies set. Identically matching blue shirt and blue pants, like a mechanic's outfit, mechanic's uniform." Sergeant McAlorum further testified that [Appellant] gave him a "limited description of the people he believed shot him, as well as several locations as to where it happened." [Appellant] identified the locations relating to this incident as[ ] 2602 Berbro Street[,] the middle of the block of Garman Street[,] and the intersection of Garman and Bialy Streets.

Ms. Edna B. Turner testified that she is the owner of 2602 Berbro Street and that the property was unoccupied in October 2008. She also testified that she and her granddaughter had been to the property, mowed the lawn and checked to make sure it was secure on the morning of October 14, 2008.

Detective Timothy McCool testified that he was assigned to investigate this shooting incident of October 14, 2008, and that, as part of his investigation, he recovered a .45 caliber revolver from the enclosed front porch of 2602 Berbro Street containing "six .45 caliber FCCs; they are fired casings." In addition to the revolver, Detective McCool also recovered sixteen FCCs, all within twenty feet of each other, from the vicinity of the intersection of Garman and Bialy Streets. He testified that these casings consisted of "three .40 caliber FCCs; seven RMP .380 auto FCCs; and six RMP .32 auto FCCs." In addition to the casings, he also recovered a projectile nearby on the 7300 block of Garman Street. Detective McCool testified that, including the revolver, "I think there were four different weapons fired that day."

Detective David Tighe testified he was the lead detective assigned to investigate this shooting incident. As part of his investigation, he personally inspected the area around the

lightpost in the middle of the 7300 block of Garman Street and did not find any fired cartridge casings.

Police Officer Raymond Andrejczak testified that he is assigned to the Philadelphia Police Department's Firearms Identification Unit. He explained that when a revolver is fired "you would not expect to have fired cartridge cases where a revolver was fired," whereas a semiautomatic "automatically ejects [any] fired cartridge cases out from the firearm." Officer Andrejczak tested the revolver recovered and found it to be operable. He further testified that, although the six casings recovered from the revolver had been fired from the same revolver, he was unable to determine with scientific certainty that they were shot from that revolver, although it was most likely that they had been.

*Commonwealth v. Burnett*, No. 3498 EDA 2012, unpublished memorandum at 1-3 (Pa. Super. 2014) (quoting from Trial Court Opinion, 6/3/13, at 4-8).

Following his jury trial, Appellant was convicted of criminal trespass,[1] possession of a firearm by a minor,[2] and aggravated assault.[3] "On September 4, 2012, he was sentenced to consecutive terms of [3-7] years' imprisonment for criminal trespass, [2-5] years' imprisonment for possession of a firearm by a minor, and [7-20] years' imprisonment for aggravated assault." *Burnett*, No. 3498 EDA 2012, unpublished memorandum at 3. Thus, the trial court sentenced Appellant to an aggregate term of 12-32 years' incarceration. This Court subsequently affirmed Appellant's judgment of sentence, and he did not seek further review with our Supreme Court. *See Commonwealth v. Burnnett*, 100 A.3d 321 (Pa. Super. 2014) (unpublished memorandum).

_____

[1] 18 Pa.C.S. § 3503(a)(1)(i).

[2] 18 Pa.C.S. § 6110.1.

[3] 18 Pa.C.S. § 2702(a)(1).

Appellant filed a timely, *pro se* PCRA petition on December 3, 2014. The PCRA court appointed counsel, who then filed an amended PCRA petition on Appellant's behalf on October 23, 2016. The PCRA court held a brief hearing on May 5, 2017; however, the PCRA court did not receive any testimony in support of Appellant's claims, and concluded the hearing by advising PCRA counsel that it intended to issue a notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. **See** N.T. PCRA Hearing, 5/5/17, at 3-6. That same day, the PCRA court issued the Rule 907 notice. Appellant did not file a response thereto and, on August 11, 2017, the court dismissed the petition. Appellant filed a timely notice of appeal. He then filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on September 30, 2017. The PCRA court issued its 13-page, Rule 1925(a) opinion nearly a year later, on September 13, 2018.

Appellant now presents the following questions for our review:

1. Was … Appellant's sentence illegal because he was subject to an unconstitutional mandatory minimum sentence?

2. Was trial counsel ineffective for failing to request a self[-]defense charge for the jury[?]

3. Was trial counsel ineffective for failing to object when the [PCRA] [c]ourt failed to give … a "no adverse [inference]" charge to the jury?

4. Did the [PCRA] [c]ourt err in failing to hold an evidentiary hearing where substantial issues of material fact were raised in the Amended PCRA Petition[?]

Appellant's Brief at 10.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This

- 5 -

review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted). For ease of disposition, we address Appellant's claims in reverse order; however, we integrate Appellant's fourth claim into our discussion of the remaining three where appropriate.

First, Appellant asserts that his trial attorney provided ineffective assistance of counsel ("IAC") by failing to request a 'no adverse inference' jury instruction. Stated in the alternative, Appellant contends that his counsel was ineffective for failing to object when the trial court failed to issue such an instruction. Under either formulation of the issue, we disagree.

When addressing an IAC claim,

[w]e begin with the presumption that counsel rendered effective assistance. To obtain relief on a claim of [IAC], a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our Commonwealth, we have rearticulated the *Strickland* Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce*, 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

- 6 -

*Commonwealth v. Dennis*, 17 A.3d 297, 301 (Pa. 2011) (some internal citations omitted).

"A 'no adverse inference' instruction directs the jury that they may not draw any adverse inference from the defendant's failure to testify in his own defense, because the defendant has the absolute right not to testify if he so chooses." *Commonwealth v. Stanley*, 830 A.2d 1021, 1022 (Pa. Super. 2003). A trial court's failure to issue the instruction, *when requested by a defendant*, is reversible error. *Id.* at 1024 (discussing the holding in *Commonwealth v. Lewis*, 598 A.2d 975 (Pa. 1991)). Similarly, when a defendant expressly requests that the instruction *not be given*, but the trial court issues it anyway, such a decision also constitutes reversible error. *Stanley*, 830 A.2d at 1022 (discussing the holding in *Commonwealth v. Edwards*, 637 A.2d 259 (Pa. 1993)). Nevertheless, in the context of an IAC claim that trial counsel was ineffective for failing to request an instruction (or failing to object when the court does not give the instruction), prejudice is not presumed; *i.e.*, it is not *per se* prejudicial to fail to request (or object to the absence of) a 'no adverse inference' jury instruction. *Stanley*, 830 A.2d at 1026 (discussing the holding in *Commonwealth v. Howard*, 645 A.2d 1300 (Pa. 1994)).

Here, Appellant asserts that "the failure of trial counsel to object to the jury instruction and [his failure] to raise the issue on direct appeal was prejudicial and was ineffective assistance of counsel." Appellant's Brief at 30. However, all of Appellant's analysis preceding this conclusion concerns our

Supreme Court's ruling in **Lewis**, and fails to acknowledge that Court's decision in **Howard**. **See id.** at 27-29. Thus, Appellant essentially presents an argument that trial counsel was *per se* ineffective for failing to request (or failing to object to the absence of) a 'no adverse influence' jury charge. As such, **Howard** directly contradicts Appellant's conclusion. Moreover, Appellant fails to present any argument as to how he was prejudiced in the context of this case. Indeed, this was the same conclusion reached by the PCRA court below: "[Appellant], relying exclusively on **Lewis**, makes no attempt to allege that he was prejudiced. Therefore, his complaint must fail on its own weight." PCRA Court Opinion ("PCO"), 9/13/18, at 10. We agree and conclude that Appellant's third claim is meritless. **See Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014) ("Failure to prove any prong … will defeat an ineffectiveness claim.").

Next, in his second issue, Appellant asserts that his trial counsel was ineffective for failing to request a self-defense jury instruction, or, more generally, for not pursuing a self-defense claim on Appellant's behalf. The PCRA court appears to have rejected this claim on both the arguable merit and reasonable basis prongs of the IAC test, when it stated:

> It is clear from Ms. Schrader's testimony that, after hearing multiple gunshots, she saw two youths running from the direction of the shots. She then saw [Appellant] enter the scene taunting the fleeing youths, fire an additional shot at the fleeing youths and then chase after them. It is also clear that whatever confrontation led to the initial shooting had abated and that [Appellant] continued to shoot as the other apparent participants were retreating. At this point [Appellant] had a duty to retreat, [but] he didn't.

- 8 -

As noted, [Appellant] has the burden of proving counsel's deficiency. He has failed to do so. His continued pursuit of and shooting at the other youths, obviated the availability of an instruction on self-defense. It was not reasonable for counsel to pursue this line of defense.

PCO at 9. We disagree with the court's analysis for the following reasons.

### *Arguable Merit*

In order to successfully invoke a claim of self-defense, the following three conditions must be satisfied:

It must be shown that (a) the actor was free from fault in provoking or continuing the difficulty which resulted in the injury; (b) that the actor must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force to save himself therefrom; and (c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Butler*, 533 A.2d 992, 993 (Pa. 1987) (cleaned up). Furthermore, when "a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009) (citation omitted). "The Commonwealth need only [dis]prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim." *Id.*

In *Ventura*, the defendant claimed on direct appeal that the evidence was insufficient to disprove his claim of self-defense, a defense he presented in the trial court. In rejecting his sufficiency claim, we analyzed the trial testimony and concluded that the "testimony at trial support[ed] the proposition that retreat was possible and there was no evidence that Ventura's retreat would have exposed him to additional harm." *Id.* at 1144. In that

- 9 -

case, we were constrained by the maxim that when reviewing a sufficiency-of-the-evidence claim, we consider only the "the evidence admitted at trial *in the light most favorable to the verdict winner*[.]" *Id.* at 1142 (emphasis added, citation omitted).

Instantly, the PCRA court conflated Appellant's IAC claim—that counsel should have *pursued* a claim of self-defense—with a sufficiency claim alleging that the Commonwealth failed to disprove self-defense. This is immediately apparent because the court construes Ms. Schrader's testimony uncritically, as if it encompassed and suggested the only potential factual conclusions that could have been reached by the jury. When reviewing the at-issue IAC claim, however, we are compelled to ask different questions than are required for sufficiency review on direct appeal. For instance, we need not address the evidence in a light most favorable to the Commonwealth (the verdict winner in this case). Instead, to address the arguable merit of this IAC claim, we must assess whether there was at least *some* evidence supporting a claim of self-defense.

"Before self-defense is in issue, there must be evidence introduced, *from whatever source*, to justify a finding that the killing *may* have been done in self-defense." **Commonwealth v. Powers**, 398 A.2d 1013, 1015 (Pa. 1979) (emphasis added). We must also be cognizant that "[i]t remains the province of the jury as to whether [an] appellant was free of provocation, as to whether he had a duty to retreat, as to whether his belief that he was in danger of serious bodily harm or death was reasonable, and as to whether his use of

- 10 -

deadly force was excessive under the circumstances." **Commonwealth v. Mayfield**, 585 A.2d 1069, 1078 (Pa. Super. 1991). While we agree with the PCRA court that Ms. Schrader's testimony presented some facts that run contrary to a claim of self-defense, other evidence was available to support the claim, and the jury would have been "free to believe all, part or none" of Ms. Schrader's testimony when considering such a claim, had the option of self-defense been available. **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (cleaned up).

As Appellant points out, the evidence was uncontroverted that he was shot during the encounter in question. Detective Keith Scott, one of the first responders to the shooting incident, testified that, when he arrived on the scene, Appellant immediately reported that he had been shot. N.T., 6/26/12, at 23. Sergeant Phillip McAlorum testified that when he arrived soon thereafter, he observed that Appellant had been "shot in his upper leg[.]" **Id.** at 124. Moreover, Detective Timothy McCool testified to his belief that, given the ballistics evidence discovered at or near the scene of the shooting, up to four different guns were discharged in the incident. **Id.** at 154.

Thus, there is at least some evidence in the record that could support the claim that Appellant fired in self-defense. Ms. Schrader did not observe the initial volley of gunshots, but she did hear them. Almost immediately thereafter, she observed two individuals fleeing from Appellant, and Appellant firing in their direction. A jury might conclude from the combination of such evidence that Appellant was not the initial aggressor, and that he had returned

fire after being shot. **See Butler**, **supra**. Moreover, it would not be unreasonable for the jury to conclude that Appellant legitimately feared that his life had been threatened to the extent that lethal force was required to defend himself, given the fact that he had been shot. **Id.**

This brings us to the third self-defense criterion: whether Appellant had a duty to retreat once the unknown individuals took flight. The PCRA court suggests that this is a forgone conclusion, ostensibly because whatever threat that was presented by the initial shooting "had abated" when Appellant "continued to shoot as the other apparent participants were retreating." PCO at 9. While we agree that a jury *may* have come to such a conclusion despite the presence of self-defense claim, we reject the conclusion that this was the *only* possible reasonable conclusion in the circumstances of this case.

First, even if Appellant's assailants had begun retreating, the threat involved was the lethality of a firearm, or multiple firearms, a threat that did not dissipate quickly merely because the initial aggressors had begun to flee. It would not be unreasonable to conclude that a person who had just shot someone in the leg might turn and fire again while retreating. Second, critical to the question of abatement of the threat is the time that transpired between the shooting of Appellant and the shots he fired as the purported victims ran away. Whether enough time had transpired for the threat to have faded sufficiently to preclude the assertion of self-defense is itself a factual determination to be made by the jury. **Mayfield**, **supra**. Accordingly, we conclude that there is arguable merit to Appellant's claim that counsel should

- 12 -

have pursued a self-defense claim and, relatedly, that he should have sought a self-defense jury instruction.

### *Reasonable Basis*

The PCRA court stated that it was reasonable for Appellant's trial counsel to not pursue a self-defense claim, but it reached that conclusion premised solely on its prior conclusion that there was no arguable merit to Appellant's IAC claim.  Moreover, because the PCRA court denied Appellant's petition without a hearing, trial counsel did not testify as to any other reasonable basis for his failure to pursue a self-defense claim on Appellant's behalf.  Thus, we must also reject the court's conclusion regarding whether trial counsel had a reasonable basis not to pursue a self-defense claim.

### *Prejudice*

Prejudice occurs as a result of IAC when "there is a reasonable probability that the outcome of the [trial] would have been different had counsel not been ineffective" in failing to pursue a self-defense claim. ***Commonwealth v. Dennis***, 950 A.2d 945, 954 (Pa. 2008).  Here, the PCRA court did not address the prejudice prong of Appellant's self-defense IAC claim in its Rule 1925(a) opinion.  Given the record before us, including the failure of the PCRA court to conduct an evidentiary hearing, we decline to address the prejudice prong of Appellant's IAC claim at this time.  However, for the reasons state above, we reject the notion that Appellant's firing of his weapon while his assailants had begun to retreat conclusively demonstrates, by itself,

that Appellant was not prejudiced by counsel's failure to pursue a self-defense claim.

For these reasons, we vacate the PCRA court's order denying relief, and remand for an evidentiary hearing to determine if trial counsel had a reasonable basis upon which to not pursue a self-defense claim on Appellant's behalf, and whether there is a *reasonable probability* that the outcome of the trial would have been different if the jury had the option available of finding that Appellant acted in self-defense.

Finally, Appellant asserts that he is entitled to a new sentencing hearing based on his claim that he received an illegal, mandatory-minimum sentence. Appellant asserts that his sentence is illegal pursuant **Alleyne v. United States**, 570 U.S. 99 (2013). In **Alleyne**, the High Court held that facts that increase the penalty for a crime beyond the prescribed statutory minimum sentence must be submitted to a jury and proven beyond a reasonable doubt.

Appellant alleges that the trial court sentenced him pursuant to the mandatory minimum sentence prescribed by 42 Pa.C.S. § 9712 (held unconstitutional in **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014)), which, read, in pertinent part, that "any person who is convicted in any court of this Commonwealth of a crime of violence … shall, if the person visibly possessed a firearm ... be sentenced to a minimum sentence of at least five years of total confinement." 42 Pa.C.S. § 9712(a).

The PCRA court rejected this claim, stating that, "[a]lthough it was aware of the mandatory minimum sentence, the [trial c]ourt, after reviewing

[Appellant]'s pre-sentence investigation report and hearing [the] argument of counsel, imposed a sentence in the aggravated guideline range[,]" and, therefore, did not impose the mandatory minimum sentence. PCO at 4. The PCRA court asserts that this case is essentially identical to that of *Commonwealth v. Zeigler*, 112 A.3d 656 (Pa. Super. 2015).

In *Zeigler*, Section 9712 applied to the defendant's conduct, but the trial court imposed a sentence that exceeded the mandatory minimum required by Section 9712. The *Zeigler* Court nevertheless declined to vacate the defendant's sentence based on the following analysis:

> We add that we are aware that a mandatory minimum statute exists for [the defendant]'s aggravated assault crime since he admitted to visibly possessing a firearm during its commission. 42 Pa.C.S. § 9712. Based on decisions from this Court, imposing such a mandatory is illegal. However, the sentencing court exceeded the mandatory minimum sentence when it applied the standard guideline range sentence where a deadly weapon was used. Hence, the court did not sentence the defendant based on the mandatory statute, and his sentence is not illegal on that ground.

*Zeigler*, 112 A.3d at 662 (citations omitted).

Notably, Appellant fails to address *Zeigler* in his brief, despite the PCRA court's explicit reliance on that decision. In any event, we do not find the instant matter distinguishable from *Zeigler* and, therefore, we agree with the PCRA court that Appellant is not entitled to relief on this claim.

Order *vacated*. Case *remanded* for an evidentiary hearing in accordance with this memorandum. Jurisdiction *relinquished*.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/3/19</u>