J-S23021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAQUAN JORDAN | |
| Appellant | No. 1324 EDA 2015 |

Appeal from the Judgment of Sentence December 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008439-2013

BEFORE:  PANELLA, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED MAY 17, 2016**

Jaquan Jordan appeals from the judgment of sentence imposed December 12, 2014, in the Philadelphia County Court of Common Pleas.  The trial court sentenced Jordan to an aggregate term of four to 12 years' imprisonment, following his conviction of firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possessing an instrument of crime ("PIC").[1]  On appeal, Jordan challenges only the discretionary aspects of his sentence.  For the reasons set forth below, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 6106, 6108, and 907, respectively.

The facts underlying Jordan's arrest and convictions are summarized by the trial court as follows:

In the days leading up to April 11, 2013, a group of high school students associated with the Lansdowne section of Philadelphia, and a group of high school students associated with the Wynnefield section of Philadelphia, had an escalating series of conflicts. On April 11, Basil Harrison from Wynnefield was going to fight Anthony White, known as "Tone," from Lansdowne as the next step in this conflict.

At approximately 3:30 in the afternoon, a group from Wynnefield, which included Harrison, Tyler Blango, and Rahim Pleasant, congregated at the Tustin Playground, in the outfield of the baseball diamond, where a group from Lansdowne was already present. [Jordan] and Stanley Postell were present with the students from Lansdowne. [Jordan] was wearing a green shirt. By the time Blango arrived at the playground, he had been told that Postell was going to have a gun. Approximately 30 students were present on the playground, forming a circle around the fight location. Although Harrison and Tone were supposed to fight, Tone backed out of the fight for an unknown reason. Instead, Daquan Briscoe stepped in for Harrison while [Jordan] stepped in for Tone.

While [Jordan] and Briscoe were fighting, Postell, Blango, and [another male] got into a verbal argument. During this argument, Postell drew his gun and shot at Blango and the crowd. Thereafter, Blango pulled his gun and attempted to return fire, but Blango's gun did not work. Upon the shots being fired, the spectators watching the fight began to flee from the area.

During the resultant firefight, [Jordan] also drew a firearm and extended his arm, appearing to fire towards 60th Street. [Jordan] left the playground via the 60th Street exit. Eyewitness Sharletta Ambey saw [Jordan] with the firearm and followed [him] in her car as he left the playground. Ambey confronted [Jordan] on the street, stating that she saw what he had done and that she would be reporting him. [Jordan] then told Ambey to "get out of his face before he [shot her]." [Jordan] then left Ambey, who continued to follow [him] to his home. Ambey flagged down a responding police officer, who detained [Jordan].

- 2 -

An initial search of [Jordan's] home did not produce the firearm that [Jordan] possessed. Police also failed to recover any fired cartridge cases. However, while [Jordan] was in custody at the police Homicide Unit, [he] informed Wilmer Colon, another individual in police custody, that he had thrown the firearm out of his house through the back window. [Jordan] further stated that he "hop[ed] [he] didn't hit anybody and that he "only had one round." Shortly after hearing this information, Colon provided a statement to police. Police then returned to [Jordan's] home and searched the backyard, where they recovered a black .22 caliber revolver. The revolver was loaded with one live round in the cylinder.

Trial Court Opinion, 5/26/2015, at 2-4 (record citations and footnotes omitted).

Both Postell and Blango were injured during the gunfire, and one of the spectators, Bernard Scott, was shot and killed. On June 28, 2013, a grand jury returned an indictment against Jordan on the above-stated charges, as well as additional charges of murder (first and third degree), attempted murder, aggravated assault, criminal conspiracy, and recklessly endangering another person ("REAP").[2] His case proceeded to trial, and on September 26, 2014, a jury returned a guilty verdict on the firearms offenses and PIC, but acquitted him on the charges of murder, attempted murder, aggravated assault and conspiracy.

On December 12, 2014, the trial court sentenced Jordan to a term of three to seven years' imprisonment for carrying a firearm without a license,

---

[2] **See** 18 Pa.C.S. §§ 2505, 901, 2702, 903, and 2705, respectively. The REAP charge was *nol prossed* prior to trial.

a consecutive term of one to five years' imprisonment for carrying a firearm on a public street in Philadelphia, and a concurrent term of four months to two years' imprisonment for PIC - an aggregate sentence of four to 12 years' imprisonment. Each of the individual sentences were imposed within the aggravated range of the sentencing guidelines.[3] On December 14, 2014, Jordan filed a post-sentence motion seeking modification of his sentence. The trial court denied Jordan's motion on March 30, 2015, and this timely appeal followed.[4]

Jordan's sole issue on appeal challenges the discretionary aspects of his sentence. He contends the trial court abused its discretion by sentencing him in the aggravated range of the guidelines, without giving proper consideration to certain mitigating factors, such as his age, his lack of a prior record, and the fact no one was harmed by his actions. **See** Jordan's Brief at 12. Moreover, Jordan argues the trial court improperly inferred that his

_____

[3] Jordan's prior record score was a zero. **See** N.T., 12/12/2014, at 4. Therefore, the sentencing guideline ranges for his convictions were as follows: (1) Section 6106 charge (offense gravity score of nine), 12 to 24 months', plus or minus 12; (2) Section 6108 charge (offense gravity score of five), restorative sanctions to nine months', plus or minus three; (3) PIC (offense gravity score of three), restorative sanctions to one month, plus or minus three. **See id.** at 5. **See also** Trial Court Opinion, 5/26/2015, at 5 n.7.

[4] On April 30, 2015, the trial court ordered Jordan to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Jordan complied with the court's directive, and filed a concise statement on May 20, 2015.

conviction of PIC "indicated the jury had concluded that [Jordan] fired the weapon" when, in fact, the jury acquitted him of the murder and assault charges. *Id.* at 11. The result, Jordan asserts, was a manifestly excessive sentence. *Id.*

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Jordan complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence, and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether Jordan has raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). "[A]n allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial question for our review." *Commonwealth v. Rhoades*, 8 A.3d 912, 918-919 (Pa. Super. 2010), *appeal denied*, 25 A.3d 328 (Pa. 2011), *cert. denied*, 132 S.Ct. 1746 (U.S. 2012). However, an "excessive sentence claim[ ] in conjunction with an assertion that the court did not consider mitigating factors[,]" does present a substantial question for our review. *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015), *quoting Commonwealth v. Dodge*, 77 A.3d 1263, 1272 (Pa. Super. 2013) (*en banc*), *appeal denied*, 91 A.3d 161 (Pa. 2014). Moreover, a claim that the trial court considered improper factors when imposing an aggregate range sentence also raises a substantial question. *Commonwealth v. Stewart*, 867 A.2d 589, 592 (Pa. Super. 2005). Accordingly, because we find Jordan's claims raise a substantial question, we proceed to an examination of his argument on appeal.

When considering a challenge to the discretionary aspects of sentencing, we must bear in mind the following:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009). Moreover, where, as here, the trial court had the benefit of a pre-sentence investigation report, we will presume the court was "aware of all appropriate sentencing factors and considerations." *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (citation omitted).

In the present case, the trial court reviewed Jordan's presentence investigation report and, accordingly, was aware of the mitigating factors Jordan cites. Moreover, the court specifically stated: "Nobody is going to be punishing [Jordan] for the murder of Mr. Scott or, for that matter, attempted murder of Tyler Blango or aggravated assault of Tyler Blango." N.T., 12/12/2014, at 6. The court further assured defense counsel:

> The record should be completely clear that all of us accept and will abide by the jury's verdict, most importantly me because I'm sentencing [Jordan], and I will not be sentencing him and I realize he has been found not guilty for conspiracy to commit murder, for murdering Mr. Scott, for the attempted murder of Mr. Blango and for the aggravated assault of Mr. Blango.

- 7 -

*Id.* at 7-8.

Nevertheless, the trial court determined that the circumstances of Jordan's conviction presented "aggravating factors," specifically, the fact that Jordan brought a loaded firearm to a fight at a playground. *Id.* at 14-15. The court explained: "That takes it well beyond what is contemplated by the sentencing guidelines within the heartland of those guidelines." *Id.* at 15. We find no reason to disagree.

Furthermore, contrary to Jordan's assertion, the trial court did not improperly find that Jordan fired his gun during the fight. *See* Jordan's Brief at 13. In making this accusation, Jordan cites to the following comments by the trial court at the sentencing hearing:

> Now, it's entirely possible the jury concluded that [Jordan] wasn't involved in the conspiracy – they did conclude that – and therefore he's not culpable under a conspiratorial liablity theory for Tyler Blango. We only submitted serious bodily injury caused, for instance, and a reasonable juror on that panel could have concluded that he didn't shoot the person so he didn't cause any serious bodily injury, but he was trying to shoot at him or somebody else. And I think that that's the only conclusion one can reach consistent with the PIC result was that he was intending to use that gun in the playground for a criminal purpose and to shoot someone. I don't know what else you'd use a gun for.

N.T., 12/12/2014, at 7. Taken in context, the trial court's comments reveal the court simply acknowledged the jury's guilty verdict on the charge of PIC indicated that Jordan possessed the firearm **with the intent to use it criminally**. *See* N.T., 12/12/2014 at 6 ("In this case, the jury could well have and did conclude that he had [the] intention to use the gun for a

criminal purpose, took it to a playground, used it for a criminal purpose."). Indeed, the jury was instructed that to convict Jordan of PIC, they had to find, *inter alia*, that he possessed the firearm "with the intent to attempt or to commit a crime with it." N.T., 9/23/2014, at 270. While the court suggested the jury could have found Jordan discharged his firearm, it certainly did not rely upon this fact in imposing sentence. *See id.* at 15 ("This is not a mere possession of a gun. It's a possession of a gun brought to a playground where a fight was being contemplated."). We find the trial court's reliance on the unique facts of this case to support an aggravated sentence was appropriate and reasonable, and the sentence imposed was not manifestly excessive.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/2016