J-S12039-21
J-S12040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID MCKINNEY | : | |
| | : | |
| Appellant | : | No. 1567 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 11, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012574-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID MCKINNEY | : | |
| | : | |
| Appellant | : | No. 1573 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 23, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004519-2015

BEFORE: LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: Filed: May 27, 2021

David McKinney ("McKinney") appeals from the judgments of sentence

imposed following the revocation of his probation.[1]  We affirm.

On November 16, 2015, McKinney entered a negotiated guilty plea to possession of an instrument of crime and simple assault at No. 12574-2012. The trial court sentenced McKinney, pursuant to the plea agreement, to time served to 23 months in prison, with immediate parole, followed by an aggregate term of 5 years of probation.

On March 4, 2016, McKinney entered a negotiated guilty plea to burglary, criminal trespass, and violation of a protective order at No. 4519-2015.  The trial court sentenced McKinney, pursuant to the plea agreement, to 18-36 months in prison, with credit for time served, followed by 3 years of probation, to be supervised by the mental health unit.

The revocation court summarized what next transpired as follows:

> During probation, [McKinney] tested positive for amphetamines, cocaine and marijuana.  He eventually completed a program at the Keystone Center on January 11, 2019[,] and upon release, failed to follow through and go to the recovery house as planned[.]  [McKinney] could not be located for approximately 60 days after he was discharged from the Keystone Center.  Wanted cards were issued on or about February 15, 2019. On or about March 14, 2019, [McKinney] phoned his probation officer and admitted to her that he had relapsed.  [McKinney] was instructed to turn himself into the probation officer on Tuesday,

---

[1] The revocation court revoked McKinney's probation and resentenced him at docket numbers CP-51-CR-0012574-2012 ("No. 12574-2012") and CP-51-CR-0004519-2015 ("No. 4519-2015") on August 23, 2019.  On September 11, 2019, the revocation court amended the revocation sentence imposed at No. 12574-2012.  McKinney filed a separate Notice of Appeal at each docket number.  Because McKinney's briefs in each appeal present identical claims and arguments, we will address his appeals together.

March 19, 2019; however, on March 17[, 2019, McKinney] was detained on the probation warrant.

On May 31, 2019, a *Gagnon II*[2] hearing was held and [McKinney] was found to be in violation of probation[,] and [his] probation was revoked [at both docket numbers]. A pre-sentence [investigation] report [("PSI")] and mental health evaluation w[ere] ordered. On August 23, 2019, [McKinney] was sentenced to a term of two[-]and[-]one[-]half (2½) to five (5) years of incarceration on the conviction of possessing an instrument of crime[,] and a concurrent term of one (1) to two (2) years of incarceration for simple assault was imposed under [No. 12574-2012]. [McKinney] was also sentenced to a consecutive term of two[-]and[-]one[-]half (2½) to five (5) years of incarceration[,] plus five (5) years of probation on the burglary … conviction under [No. 4519-2015]. The aggregate[] sentence imposed was five (5) to ten (10) years of incarceration[,] followed by five (5) years of probation. Credit for time served was ordered.

On September 3, 2019, [McKinney's] counsel filed a Motion to Modify Sentence. On September 11, 2019, a hearing was held on the [M]otion[,] and the [M]otion was denied as to [No. 4519-2015]. Under [No.12574-2012], the [M]otion was granted in part, [and] denied in part; reducing [McKinney's] sentence to a term of one[-]and[-]one[-]half (1½) to three (3) years of incarceration on the conviction of possessing an instrument of crime[,] … and a concurrent term of one (1) to two (2) years of incarceration for simple assault. Thereby reducing the aggregate[] sentence imposed to four (4) to eight (8) years of incarceration[,] followed by five (5) years of probation. Credit for time served was ordered. …

Trial Court Opinion, 12/1/20, at 2-3 (footnote added).

On October 18, 2019, McKinney filed a Petition for relief pursuant to the

Post Conviction Relief Act ("PCRA")[3] at both docket numbers, arguing that

---

[2] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

[3] *See* 42 Pa.C.S.A. §§ 9541-9546.

- 3 -

counsel mistakenly failed to file a timely notice of appeal, as requested by McKinney, and seeking reinstatement of McKinney's direct appeal rights, *nunc pro tunc*. The PCRA court granted McKinney relief, and McKinney filed his Notices of Appeal, *nunc pro tunc*, on July 31, 2020. The revocation court subsequently ordered McKinney to file a Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal, and McKinney timely complied.

On appeal, McKinney raises the following issue for our review:

Is the sentence imposed for a technical violation of probation unduly harsh and excessive, and greater than that necessary to vindicate the [c]ourt's authority under the circumstances where:

a. [C]onfinement in a state correctional facility for the term imposed is not the least restrictive sentence necessary to effectuate the aims of Pennsylvania's sentencing laws[,] and is the sentence greater than that which would be consistent with [the] protection of the public, the gravity of [McKinney's] conduct as it relates to the impact on the life of others in the community, and the rehabilitative needs of [McKinney];

b. [A]nd where the [trial] court did not adequately consider [McKinney's] age, rehabilitative needs, his acceptance of responsibility for his crime and violation, his progress toward rehabilitation and the supportive environment available to [McKinney]?

Brief for Appellant at 4.

McKinney argues that his sentence was excessive, particularly because he committed a technical violation of probation, rather than a new criminal offense. *Id.* at 34-35. McKinney points to several pieces of information included in his PSI, including, *inter alia*, his history of substance abuse and mental health issues, and his treatment history for both issues. *Id.* at 37.

According to McKinney, his behavior does not indicate that he is likely to commit another crime, and a prison sentence is not necessary to vindicate the court's authority. *Id.* at 40-41. Specifically, McKinney points out that he turned himself into his probation officer, and argues that he has accepted responsibility, shown remorse, and taken steps toward rehabilitation. *Id.* at 40. McKinney also argues that the sentence is not consistent with his rehabilitative needs, because he is already enrolled and "flourishing" in rehabilitative programs outside of prison. *Id.* at 41-42.

McKinney challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. *See Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010). In considering such a challenge,

> [w]e conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> * * *
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

- 5 -

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, McKinney filed Notices of Appeal, *nunc pro tunc*, preserved his claim in his Motion to Modify Sentence, and included a separate Pa.R.A.P. 2119(f) Statement in his appellate briefs. Additionally, McKinney's claim that the revocation court imposed an excessive sentence, following a technical violation, without adequately considering the required sentencing factors and his rehabilitative needs, raise a substantial question for our review. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that "[t]his Court has [] held that an excessive sentence claim— in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question." (citing ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014)); ***Commonwealth v. Colon***, 102 A.3d 1033, 1043 (Pa. Super. 2014) (concluding that "[a]ppellant's claim that the trial court sentenced him to a term of total confinement based solely on a technical violation raises a substantial question for our review."). Thus, we will address the merits of McKinney's discretionary sentencing claim.

Our standard of review is well settled:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

- 6 -

*Colon*, 102 A.3d at 1043.

> The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants[,] and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.
>
> The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant appears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721.

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014) (some citations and quotation marks omitted).

Upon revocation of probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentence, including incarceration. 42 Pa.C.S.A. § 9771(b). However, the imposition of total confinement upon revocation requires a finding that either "(1) the

defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." *Id.* § 9771(c).

Moreover, "[i]n every case in which the court … resentences an offender following revocation of probation, … the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.* § 9721(b); *see also* Pa.R.Crim.P. 708(D)(2) (providing that "[t]he judge shall state on the record the reasons for the sentence imposed."). However, following the revocation of probation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. *See Pasture*, 107 A.3d at 28 (stating that "since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing.").

Here, the revocation court sentenced McKinney to an aggregate term of 4-8 years in prison, with credit for time served, plus 5 years of probation, following the revocation of his probation. During the revocation hearing, the revocation court heard from McKinney's counsel, who acknowledged McKinney's long history of substance abuse, but explained that McKinney was in treatment and doing well. *See* N.T., 8/23/19, at 6, 8. Counsel also

recounted McKinney's difficult upbringing and family history of substance abuse. *Id.* at 7.

McKinney also spoke on his own behalf. McKinney personally recounted his experiences in treatment programs. *Id.* at 14. Additionally, McKinney stated as follows:

> This might have been a long road for me, taking a long time to come to the conclusion that I have an addiction, but it's not something that you address -- you have to address it day-to-day, not, I gotta beat it, I'm clean for 13 years and then relapse. You have to stay with the program. I didn't take advantage of everything that was offered to me. …

*Id.* at 12.

McKinney's father, David McKinney, Sr., also testified regarding his own history with substance abuse, his sobriety, and his intention to help McKinney after his release. *See id.* at 18-23.

After hearing testimony, the revocation court stated its reasons for imposing the sentence:

> To say that you broke a few rules is putting it mildly.
>
> Mr. McKinney, at this point in your life, you should have been well beyond that. I dare say we're nowhere near where you need to be before you can be out on the street sober. Can you do it? Absolutely. But I would be remiss if I were to allow you at this point in time, because to do so is to invite potential violence and continued drug use and/or a possible death to you from overdose.
>
> The efforts to rehabilitate you since a juvenile have gone on to date. Obviously, relapses are a part of addiction, but with you it's a lot more than that. 13 arrests, 12 convictions, 9 commitments, 11 violations, three pending, including two before this [c]ourt, eight revocations.

You reported an extremely difficult childhood, to which I alluded and I was referring to what you had noted in the [PSI]. I do think that quite a bit of what you have to say is self-serving and manipulative. I don't doubt that there were great difficulties. Your dad completely admits that. But I also sense that even when you were a juvenile there were attempts to reign you in and not exhibit a lack of control of your behavior that you continued to do in terms of the upbringing.

I do note that you are an extremely intelligent human being. And as you indicated, you have vocational training in various trades that can help you. You attended -- you were educated, after you moved out of Bucks County, educated in Florida at a program for academically gifted children. You attended an academy in Melbourne. You were expelled. You transferred to a different location, dropped out of ninth grade at age 15, left school, did obtain your GED while incarcerated in one of your prior stays at SCI Coal Township.

You enrolled in Seminole Community College at some point in the early 2000s. And I think that's where you picked up the classes in sheet metal work, duct installation. Your dad had apparently offered several methods to continue to work, mostly employed by a general contracting company, between April and August [] 2018.

Your substance abuse history includes alcohol, marijuana, methamphetamines, cocaine, LSD, psilocybin mushrooms. First claimed to be drinking at the age of three. Continual relapses. Positive testings as well under [the c]ourt's supervision. Various attempts at treatment, not the least of which at age 15, inpatient, admitted to [a] treatment center in Florida, Keystone Center in Chester, PA, later discharged [o]n January 11, 2019. Directed to enter a recovery house in Levittown, did not go. Checked into Gaudenzia, checked out. Open warrants.

The reports I received from the probation department that generated the request for detention, I reviewed them as well, and they describe the litany, particularly within the **Gagnon** summaries, of efforts on the part of your probation department -- our probation department to reign you back in.

In May 2018, you transferred to [the] mental health unit, released from custody, submitted a diluted drug test [in July and

August 2018], positive for cocaine and marijuana. … And then they were trying to get you into JFK Behavioral Health, claimed to be there enrolled. Then apparently in September last year, after various attempts to contact you, they became aware of the fact that the address listed was a vacant house. Attempted routine visits. Reported address, homeowner denied that you ever lived there. Updated address. Positive testing for amphetamines at final office visit [in] October 2018. …

November 2018[, you] tested positive[ for] amphetamines, marijuana again. Then the incident in December involving waking up, wherever you woke up, with a dead body at that residence. Checked yourself into Keystone. Plan was to get you into Life's Journey Recovery House in Levittown. Discharged in January. Plan to rent at Decatur Street.

Attempt to locate you unsuccessful. Voicemail contact, claimed you would eventually show up again, but you wanted to take care of whatever health concern you said you had. Check at Decatur Street[;] actually, you had not been residing there as previously stated. Wanted cards were issued. Whereabouts were unknown in February.

In March, voice message from you to the officer, admitted relapse, informed of the warrant, and then he was finally detained….

….

The bail commissioner, trial commissioner decided, for whatever reason, to let you out and released the detainer on two cases…. Claimed you're going to go find employment, find treatment. Off we go. …

…[You c]heck in and out [of] Friends Hospital. And then you became aggressive with the officer when she was trying to figure out what was going on with you.

And I just reviewed the highlights in addition to the other positive testings that were listed here and the review of your PSI. It is clear to me, sir, that you did not heed any of this [c]ourt's direction, and that if left to your own devices, like you have been left on multiple occasions, you would be right back here again with new cases. That's why I detained you. Quite frankly, I couldn't

trust you out there. And I do sense that you couldn't trust yourself.

*Id.* at 23-29; *see also* Trial Court Opinion, 12/1/20, at 8-9 (stating that the revocation court imposed a prison sentence "only after [McKinney] had violated probation with multiple failed drug tests, refused treatment and demonstrated overall non-compliant behavior that clearly indicated that probation had been ineffective as a rehabilitative or crime deterrent tool."). Moreover, the revocation court explicitly stated that it had reviewed the PSI and mental health assessment. *Id.* at 6; *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (stating that "where the trial court is informed by a [PSI], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.").

The record therefore confirms that the revocation court was provided with sufficient information to make a fully-informed sentencing decision following the revocation of McKinney's probation, and that the court adequately considered the relevant sentencing factors. Additionally, McKinney's aggregate post-revocation sentence is not manifestly excessive. *See generally Commonwealth v. Schutzues*, 54 A.3d 86, 99 (Pa. Super. 2012) (stating that "[a] trial court does not necessarily abuse its discretion in imposing a seemingly harsh post-revocation sentence where the defendant originally received a lenient sentence and then failed to adhere [to] the

- 12 -

conditions imposed on him."). Discerning no abuse of discretion by the trial court, we will not disrupt McKinney's sentence on appeal.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge Nichols concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/27/21