J-S16041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY LEWIS | : | |
| | : | |
| Appellant | : | No. 1342 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 10, 2020
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002198-2018

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                  **FILED: SEPTEMBER 21, 2022**

Corey Lewis appeals *nunc pro tunc* from the judgment of sentence imposed following a bifurcated jury and nonjury trial in which Lewis was convicted of attempted homicide, carrying a firearm without a license, and possessing a firearm as a person prohibited from doing so.[1] For these offenses, Lewis received an aggregate sentence of twenty-one to forty-two years of incarceration. On appeal, Lewis challenges both the weight and sufficiency of the evidence used to establish his guilt. In addition, Lewis contends that the lower court abused its discretion when it imposed consecutive sentences and, in doing so, resulted in him receiving an excessive aggregate sentence that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 6106(a)(1); and 18 Pa.C.S.A. § 6105(a)(1), respectively. The prohibited possession charge was adjudicated by the court and decided on the same day as the jury's verdict.

was not reflective of his ability to become rehabilitated. We affirm.

Briefly, the facts underpinning Lewis's convictions stem from a shooting that occurred outside of Jazzland, a bar/nightclub located in Harrisburg, Pennsylvania. Lewis fired several shots at the back of Antoine Jackson, and resultantly, Jackson was struck twice by bullets discharged from Lewis's weapon.

Before his trial began, the parties agreed that a prior conviction made Lewis ineligible to possess a firearm. Therefore, the prohibited possession of a firearm charge was bifurcated from the other two crimes, to be decided by the court after his jury trial.

At trial, despite there being a seemingly high number of people eligible, the Commonwealth did not present any witnesses that were there on the night the shooting occurred, including the victim. Instead, the Commonwealth chiefly utilized the testimony of Detective Richard Gibney wherein he, *inter alia*, identified Lewis from video footage taken from Jazzland's security system, which was set up both inside and outside of the facility.

Detective Gibney first indicated that he positively identified both Lewis and Jackson as being at various points throughout the bar, which, in that phase of the recording, went on for approximately fifteen minutes. Then, after Jackson left through a side door, Lewis, who put his hood over his head, proceeded to follow him outside approximately one minute later. Lewis pursued Jackson on foot and, in the process, fired several shots at him. After that, Lewis ran away from the scene with police officers arriving roughly four

to five minutes later.

In more of his testimony, Detective Gibney identified that he had discussed what had happened with Jackson while Jackson was recovering from the shooting in a hospital. However, Detective Gibney conceded that: (1) there was no search performed of Jackson's phone to further the investigation even though it was in his possession; and (2) there was no attempt made to find the firearm Lewis used in the shooting. Eventually, Lewis turned himself in. Lewis's interview with Detective Gibney was played for the jury.

Ultimately, the jury found Lewis guilty of attempted murder and possessing a firearm without a license. Correspondingly, the court found Lewis guilty of possessing a firearm as a person prohibited from doing so.

At sentencing, which featured the court having had the benefit of a pre-sentence investigation (PSI) report, Lewis was sentenced to fifteen to thirty years of imprisonment for the attempted murder offense and consecutively sentenced to six to twelve years of imprisonment for prohibited possession of a firearm, with no further sentence imposed for his carrying of a firearm without a license.

Lewis did not file a direct appeal from his judgment of sentence, but later sought *nunc pro tunc* relief pursuant to the Post Conviction Relief Act (PCRA) to restore his direct appeal rights. **See** 42 Pa.C.S.A. §§ 9541-9546. The court subsequently granted his PCRA petition, which allowed Lewis to file both a post-sentence motion that would subsequently be denied as well as a notice of appeal.

Having filed a notice of appeal, the parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925, and accordingly, this matter is ripe for review. On appeal, Lewis raises three issues:

1. Was the evidence presented at trial sufficient to sustain guilty verdicts for attempted homicide and carrying a firearm without a license?

2. Did the lower court err in denying Lewis's motion for a new trial because the verdict was against the weight of the evidence?

3. Did the lower court abuse its discretion in imposing consecutive sentences and by not taking into consideration Lewis's specific attributes?

*See* Appellant's Brief, at 6 (reordered for ease of disposition).

For claims challenging the sufficiency of evidence, we employ a well-settled standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. ... Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

- 4 -

***Commonwealth v. Brockman***, 167 A.3d 29, 38 (Pa. Super. 2017) (citation omitted).

Lewis's entire argument in this domain spans three sentences. Replicated in full, he states:

> [t]he evidence presented here was insufficient to support a conviction for attempted homicide. Specifically, only Detective Gibney, who had no prior interactions with [Lewis] and had no previous knowledge of him, identified [Lewis] as the shooter. The Commonwealth did not present actual eye-witness testimony of the shooting despite numerous people being present at the bar that evening.

Appellant's Brief, at 17. Lewis's brief contains no description of the elements of his convictions and does not have any corresponding citations to the record. Moreover, Lewis has provided no authority to demonstrate that Detective Gibney's *post hoc* review of Jazzland's video system and subsequent identification of him is insufficient as a matter of law.

In the absence of any specific argument challenging a discrete aspect or multiple components of his crimes, we rely on the well-detailed opinion of the lower court in its analysis as to why Lewis is not entitled to relief. Therein, the court demonstrated why Detective Gibney's identification was legally sufficient, despite the lack of eyewitnesses used at trial:

> Detective Gibney testified that as part of his investigation, he reviewed video footage from several cameras located in and around the bar where the shooting occurred. With the video footage, he observed [Lewis] with the victim inside the bar having a conversation. A short while later, the two men walked to the bathroom together and returned to the table where they were seated. Detective Gibney then observed the victim exit the bar

and described how [Lewis] pulled his hood over his head and followed the victim outside, where the shooting occurred. [Lewis] was then seen on the video running up the street, after the shots were fired. Detective Gibney credibly testified that the person in the video, identified as the shooter, was [Lewis]. . . .

Additionally, the jurors themselves watched the video several times in the courtroom during the trial and then asked to rewatch portions of the video during their deliberations.

Trial Court Opinion, 12/16/21, at 4 (citations to the record omitted). In addition, the court noted that Lewis "admitted that he was at … Jazzland … and that he talked to the victim inside the bar." *Id*., at 5 (citation to the record omitted).

While it probably would have been helpful to the Commonwealth if it had utilized at least one eyewitness to the shooting at trial, the video evidence and subsequent identification by the Detective were, in the absence of any authority to the contrary, clearly sufficient to establish that Lewis was the shooter. Lewis's admission that he was there on the night in question, while not conclusive, further bolsters the notion that he repeatedly shot the victim. Applying our standard of review, the jury was free to believe or not believe the Detective's testimony. That testimony was juxtaposed against the video recordings, which the jury observed multiple times prior to reaching its conclusions. Therefore, cognizant that the Commonwealth was the verdict winner, the evidence used was sufficient to identify Lewis as the perpetrator of the offenses beyond a reasonable doubt, and he is due no relief.

In addressing Lewis's weight of the evidence claim, the following

principles govern our review. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." ***Commonwealth v. Clemens***, 242 A.3d 659, 667 (Pa. Super. 2020) (citation omitted). A verdict will only be reversed as against the weight of the evidence where the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021) (citation omitted). The onus is on the factfinder to resolve both contradictory testimony and questions of credibility, and we may not substitute our judgment in its place. ***See Commonwealth v. Cramer***, 195 A.3d 594, 600 (Pa. Super. 2018).

A motion for a new trial based on a weight-of-the-evidence claim is addressed to the discretion of the trial court, and as such, we review only the lower court's exercise of discretion in its determination and *not* the underlying question of whether the verdict is against the weight of the evidence. ***See Commonwealth v. James***, 268 A.3d 461, 468 (Pa. Super. 2021). When reviewing a trial court's ruling in this regard, we give the "gravest consideration to the findings and reasons advanced by the trial judge" because it is the trial judge, not the appellate court, that had the opportunity to see and hear the evidence presented. ***Delmonico***, 251 A.3d at 837 (citation omitted).

Again, absent citation, Lewis asserts that the lower court "failed to

consider the simple fact that the only evidence linking [him] to the crime was identification testimony from Detective Gibney that [he] was the other person in the video with the victim." Appellant's Brief, at 15. Lewis emphasizes that Detective Gibney's lack of knowing who he was prior to watching the video and the fact that the Commonwealth only presented four non-eyewitnesses to testify meant that there was an incredible amount of evidence missing from trial. *See id*.

While it does not appear that the trial court has specifically addressed Lewis's weight-based claim in its opinion, it implicitly found no validity to the same when it denied his post-sentence motion. *See* Order, 9/22/21. Although Lewis asserts what materially appears to be an identical identification-based argument in his weight of the evidence claim, he still has provided no cogent basis for this Court to conclude that the identification, itself, is problematic, much less that a verdict rendered in his case shocks the conscience. In addition, it is unclear as to the import of Detective Gibney's lack of prior experiences with Lewis.

While we have stated, *supra*, that Commonwealth's case likely would have been benefited using at least one eyewitness, there was no obligation or necessity for it to proceed in that manner. Here, the Detective, deemed to be credible, unequivocally made a positive identification of Lewis at all relevant points in the various video tapings. The jury then reached its determination predicated on the Detective's testimony in tandem with the videos it observed.

Later, the lower court, who was in the best position to see and hear the evidence as it had been presented at trial, denied Lewis's post-sentence motion, which specifically identified a weight-based claim. Based on the Detective's clear identification and lack of authority provided by Lewis establishing the contrary, we are unable to conclude that the verdict that was reached constituted a shocking conclusion. Therefore, it was clearly not an abuse of discretion for the court to deny Lewis relief in his post-sentence motion, and his weight-based claim fails.

In his last issue, Lewis challenges the discretionary aspects of his sentence. Like this memorandum's other areas of analysis, for discretionary sentencing claims, we rely on a well-established standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect[, *see* Pa.R.A.P. 2119(f)]; and (4) whether there is a substantial question that the sentence

- 9 -

> appealed from is not appropriate under the Sentencing Code.
>
> * * * *
>
> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citations omitted).

Looking at the record, Lewis filed a timely notice of appeal, filed the requisite post-sentence motion to preserve this sentencing issue on appeal, and, in his brief, he has included a facially appropriate concise statement pursuant to Rule 2119(f). Accordingly, we proceed to determine whether he has raised a substantial question.

Lewis avers that "the sentence imposed … is manifestly excessive such that it constitutes too severe a punishment where [his] incarceration for an aggregate term of 21 to 42 years fails to consider the gravity of the offense as it relates to the victim and [his] rehabilitative needs[.]" Appellant's Brief, at 13. While, in this section, he provides no further detail as to how the court failed to, *inter alia*, consider his rehabilitative needs, a claim that the court failed to consider this statutory requirement has been held by this Court to constitute a substantial question. *See, e.g.*, *Commonwealth v. Downing*,

990 A.2d 788, 793 (Pa. Super. 2010) (relying on the verbiage of 42 Pa.C.S.A. § 9721(b)).[2]

Lewis believes that the court failed to consider his rehabilitative needs in conjunction with his asserted unlikelihood that he will reoffend. **See** Appellant's Brief, at 19. In addition, the lower court "could not consider the gravity of the offense as it related to the impact on the life of the victim, as the victim did not appear at either trial or for sentencing." **Id**.

Our Sentencing Code establishes that:

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with … the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). However, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). While a sentencing court must state, on the record, its reasons for imposing a sentence, that requirement can be satisfied "by

---

[2] Despite our finding that he has raised a substantial question, we stress that Lewis's bald and unsubstantiated assertion, lacking in any kind of development as to how his sentence violated the Sentencing Code, could have warranted a finding that he has failed to satisfy this precept. If we proceeded in this manner, we would have been without jurisdiction to consider his underlying claim.

- 11 -

indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." *Id*. (citation omitted).

At sentencing, the court announced that it reviewed Lewis's PSI report. *See* Sentencing Hearing, 8/10/20, at 6. In its opinion, the court noted that Lewis "has not challenged the pre-sentence report[] or the information contained therein in any way." Trial Court Opinion, 12/16/21, at 7.

We find that Lewis has not pierced the presumption that the court, having reviewed his PSI, was aware of the relevant sentencing factors and made the appropriate considerations prior to sentencing. Other than vague insinuations about his age and the fact that the victim did not testify, he has not delved into any particular area demonstrating that the court imposed either an unreasonable or excessive sentence. Conversely, Lewis's two sentences fell within the standard or mitigated range of the sentencing guidelines.

To the extent that Lewis challenges the ability for a court to impose consecutive sentences, we note that courts generally have a great deal of discretion to impose a sentence concurrently or consecutively. *See, e.g.*, *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011).

Absent any basis to conclude that the court abused its discretion in sentencing, Lewis is, therefore, not entitled to any relief.

With all three of Lewis's claims being without merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

President Judge Panella joins this memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2022