J-A23020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FERNANDO ROSADO-GUZMAN | : | |
| | : | |
| Appellant | : | No. 1528 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 12, 2023
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000977-2022

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED: JANUARY 10, 2025**

Appellant, Fernando Rosado-Guzman, appeals from the judgment of sentence entered on October 12, 2023, following his jury trial conviction for third-degree murder.[1]  We affirm.

We briefly summarize the facts of this case as follows.  On August 19, 2022, Appellant and John Bratton (Bratton) were drinking beer and walking along railroad tracks in Phillipsburg, Centre County, Pennsylvania when they encountered Brian Lyncha (Lyncha).  Appellant and Lyncha began verbally arguing about a Bluetooth speaker.  A physical altercation ensued wherein the two men wrestled and rolled off the side of the railroad tracks and down an embankment.  Bratton went down the embankment where he witnessed Lyncha on top of Appellant with Lyncha punching Appellant's face.  Appellant

---

[1]  18 Pa.C.S.A. § 2502(c).

ultimately stabbed Lyncha with a knife that Appellant carried on his person. As Lyncha walked away, Appellant said, "I got you now, motherfucker." A nearby neighbor observed Lyncha stagger into her yard, fall to the ground, and tell her that he had been stabbed. Lyncha died a short time later. On August 20, 2022, Appellant was charged with criminal homicide and possessing an instrument of crime (PIC).[2] A three-day jury trial commenced on July 31, 2023. At the conclusion of trial, the jury found Appellant guilty of third-degree murder.[3] On October 12, 2023, the trial court sentenced Appellant to 13 to 26 years of incarceration, with credit for time-served. This timely appeal resulted.[4]

On appeal, Appellant raises the following issues for our review:

I.    Did the Commonwealth fail to disprove [Appellant's claim of] self-defense beyond a reasonable doubt?

II.    Whether the evidence was sufficient to support a conviction of third-degree murder [where] the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] acted with malice?

Appellant's Brief at 4.

_____

[2]    18 Pa.C.S.A. §§ 2501(a) and 907, respectively.

[3]    The jury deadlocked on the PIC charge.

[4]    Appellant filed a notice of appeal on November 6, 2023. On November 7, 2023, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. Thereafter, on December 5, 2023, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

In his first issue presented, Appellant argues that he proved self-defense at trial and the Commonwealth failed to disprove it. More specifically, Appellant argues he proved that he reasonably believed that he was in imminent danger of death or serious bodily injury, he did not provoke the threat that resulted in Lyncha's death, and Appellant did not violate the duty to retreat. *Id.* at 11-16. Appellant argues that the evidence at trial showed that "Appellant was being straddled, punched in the head, sustained a broken orbital bone, and the only witness to this event [(Bratton)] testified that he could not pull Lyncha off of Appellant." *Id.* at 14. Appellant posits that, at trial, he presented an expert who opined he sustained fractures to his facial bones as a result of the altercation. *Id.* at 12-13. Appellant also testified that he knew Lyncha had a propensity for violence. For all of these reasons, Appellant asserts he reasonably believed he was in imminent danger of death or serious bodily injury.

Next, Appellant argues that he did not provoke the threat because he testified that Lyncha threw the first punch. *Id.* at 15. Moreover, he argues that "[w]hile Bratton testified [at trial] that Appellant threw the first punch, Bratton's story changed on several occasions, and [Bratton] previously stated that he did [not] know who threw the first punch." *Id.* Appellant maintains that Lyncha "provoked the fight by continuing to harass Appellant, first at his place of employment, and [then] while Appellant was walking on the railroad tracks." *Id.* Finally, Appellant claims that he did not violate his duty to retreat because he could not get up and Lyncha punched him repeatedly in

the face. *Id.* at 16. Hence, Appellant argues that he proved self-defense and the Commonwealth did not disprove it. Moreover, Appellant posits that even if the Commonwealth proved that Appellant harbored an unreasonable belief that deadly force was necessary for self-defense, but failed to disprove he genuinely believed he was in imminent danger and did not disprove the other elements of self-defense, he could only have been "found guilty of [] voluntary manslaughter under the defense of imperfect self-defense." *Id.* at 11-12, *citing* 18 Pa.C.S.A. § 2503(b).

Our Supreme Court has held that a claim that the Commonwealth failed to disprove a claim of self-defense is a challenge to the sufficiency of evidence supporting a conviction. *See Commonwealth v. Torres*, 766 A.2d 342, 344 (Pa. 2001). "In reviewing a claim based upon the sufficiency of the evidence, the appellate court must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom." *Id.* (citation omitted).

Our Court has previously summarized the applicable law pertaining to self-defense as follows:

> [T]he justified use of deadly force requires:
>
> > a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.
>
> > \* \* \*

While there is no burden on a defendant to prove the self-defense claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

If the defendant properly raises self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.

The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and [] retreat was possible with complete safety.

The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself from that danger.

The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

As [our Supreme] Court [has] observed, the use of deadly force itself cannot be viewed in isolation with the victim as the sole physical aggressor and the defendant acting in responsive self-defense. This would be an incomplete and inaccurate view of the circumstances for self-defense purposes. To claim self-defense, the defendant must be free from fault in provoking **or escalating** the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the

- 5 -

defendant used more force than reasonably necessary to protect against death or serious bodily injury.

When the defendant's own testimony is the only evidence of self-defense, the Commonwealth must still disprove the asserted justification and cannot simply rely on the jury's disbelief of the defendant's testimony:

> The disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact.
>
> * * *

If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness. The complainant can serve as a witness to the incident to refute a self-defense claim.

Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a fact-finder is not required to believe the testimony of the defendant who raises the claim.

A number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief that the use of deadly force was necessary to protect against death or serious bodily injuries. No single factor is dispositive. Furthermore, a physically larger person who grabs a smaller person does not automatically invite the smaller person to use deadly force in response.

*Commonwealth v. Smith*, 97 A.3d 782, 787–788 (Pa. Super. 2014) (internal citations, quotations, and original brackets omitted).

Regarding voluntary manslaughter, 18 Pa.C.S.A. § 2503 provides as follows:

**(b) Unreasonable belief killing justifiable.**--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b).

As our Supreme Court has noted:

The derivative and lesser defense of imperfect belief self-defense is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life.  All other principles of justification under 18 Pa.C.S.A. § 505 must be satisfied to prove unreasonable belief voluntary manslaughter. Thus, for example, if the defendant was not free from fault, neither self-defense nor imperfect self-defense is a viable defense.

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124–1125 (Pa. 2012) (case citations omitted).

In this case, the trial court determined:

Here, [Appellant] appropriately raised the question of self-defense through testimony of his alleged fear of [Lyncha] and his belief that he needed to use his knife to protect himself during the altercation.  Much discussion during [] trial concerned the question of whether [Appellant] reasonably believed that he was in immediate danger of death or serious bodily injury and that it was necessary to use deadly force against [Lyncha] to prevent such harm. The issue being raised, it became the Commonwealth's burden to rebut [Appellant's] self-defense argument beyond a reasonable doubt.  The Commonwealth did so by presenting evidence indicating a lack of any life threatening injuries to [Appellant] following the altercation and ultimately supporting a finding that it was unreasonable for [Appellant] to use the deadly force he did in a fistfight with a man of substantially similar build that did not threaten his life.  [Appellant's] and the Commonwealth's versions of who provoked the deadly altercation varied, but the credible testimony of [] Bratton was sufficient for the jury to choose to believe the Commonwealth's version and find [Appellant] started the fight on August 19, 2022.  Finally, the

evidence suggested [Appellant] had opportunity to retreat from the fight rather than fatally stab [] Lyncha. The Commonwealth's presentation allowed the jury to properly conclude [Appellant's] decision to stab [] Lyncha rather than take the opportunity to retreat negated his self-defense theory. The evidence was sufficient for the jury to reject [Appellant's] theory of self-defense and find his slaying of [] Lyncha unjustifiable. The Commonwealth thus disproved [Appellant's] defense of self-defense beyond a reasonable doubt, and the jury's verdict of [m]urder in the [t]hird[-]degree was proper.

Trial Court Opinion, 12/5/2023, at 5-6.

Upon review, we agree with the trial court's assessment. At trial, Bratton testified that when he and Appellant encountered Lyncha along the railroad tracks, "[Appellant] blamed [Lyncha] for stealing [a Bluetooth] speaker" and "got in [Lyncha's] face and they started arguing." N.T. (P.M. Session), 7/31/2023, at 19-20. He further testified that Appellant "threw a punch … [t]owards [Lyncha's] face" and the two men "pretty much hugged each other and went down over the hill." *Id.* at 20. According to Bratton, after Appellant and Lyncha rolled down the embankment, Lyncha "was on top of" Appellant, and Bratton "tried to grab hold of" Lyncha, but "there was no prevailing" in stopping the altercation. *Id.* at 21. Bratton "just started walking away from it, [to] let the two [] fight it [out]." *Id.* at 22. Bratton saw "a flash … [o]n the ground beside [Appellant]" and Lyncha ran away while Appellant got "up and he put his hands up and he said, 'I got you now, motherfucker." *Id.* at 23. Bratton saw a knife in Appellant's hand and Appellant admitted that he "stabbed [Lyncha] a couple of times." *Id.* at 23.

The Commonwealth also presented the expert testimony of Dr. Harry Kamerow, who conducted the autopsy of Lyncha. N.T., 8/1/2023, at 6-102. Dr. Kamerow opined that the cause of Lyncha's death was as a "stab wound to the chest" which punctured his heart, and that the manner of death was homicide. *Id.* at 48-49. After examining photographs of Appellant, taken shortly after the altercation, Dr. Kamerow opined that Appellant merely sustained a "periorbital contusion of the left eye" but did not have any injuries to his hands, forearms or chest and, therefore, Appellant did not have "any of the classic defensive wounds" to suggest that Appellant was in imminent danger. *Id.* at 55-57. Dr. Kamerow opined that, based upon the trajectory of the knife wound, it would have been "impossible" for Appellant to have rotated his shoulder to retrieve a knife from his pocket if Lyncha had pinned Appellant's shoulders to the ground, as Appellant alleged. *Id.* at 66-68.

Here, the Commonwealth presented sufficient evidence to rebut Appellant's self-defense claim. While Appellant argued that he had to use deadly force to get Lyncha off of him, the jury was free to consider the Commonwealth's evidence to conclude that Appellant provoked the threat that resulted in Lyncha's death and that Appellant violated his duty to retreat. Thus, there was evidence that Appellant started the physical altercation and then escalated it, resulting in the two men falling down an embankment. As such, Appellant was not free from fault in provoking or escalating the altercation that led to the offense. Appellant did not have defensive wounds on his arms or hands to suggest that he was in imminent danger of death or

serious bodily injury or had to use deadly force in order to save himself. Finally, there was also Commonwealth evidence that refuted Appellant's suggestion that his shoulders were pinned, and, therefore, he could not safely retreat. Because Appellant was not free from fault and failed to retreat, neither self-defense nor imperfect self-defense was a viable defense. Accordingly, we conclude that there was sufficient evidence presented by the Commonwealth to disprove Appellant's theory of self-defense beyond a reasonable doubt. As such, Appellant's first appellate issue lacks merit.

Next, Appellant argues that the evidence presented at trial was insufficient to show that he acted with malice. Appellant's Brief at 17-19. More specifically, Appellant argues that "he didn't know where he was stabbing[, he] rendered a single stab[, he] used only as much force as necessary to be able to retreat from underneath Lyncha[, and he] had no idea that Lyncha was fatally stabbed." *Id.* at 19.

As set forth above, we review the sufficiency of the evidence in the light most favorable to the Commonwealth as verdict winner. *Torres*, *supra*. This Court has previously determined:

> Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty. Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1142 (Pa. Super. 2009) (internal citations and quotations omitted).

- 10 -

In this case we find there was sufficient evidence to prove that Appellant committed third-degree murder. Third-degree murder requires a showing of malice which can be inferred from the use of a deadly weapon on a vital part of the victim's body. At trial, evidence from the doctor performing the autopsy confirmed that Lyncha died from a penetrating stab wound to the heart, a vital organ. There is no dispute that Appellant stabbed Lyncha with a knife. Accordingly, malice may be inferred. Bratton testified that he witnessed it, and Appellant admitted to him that he stabbed Lyncha "a couple of times." Moreover, Appellant also exclaimed "I got you now, motherfucker" immediately after the stabbing, evidencing a recklessness of consequences and a hardness of heart which additionally supports a finding of malice. Accordingly, Appellant's second appellate issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/10/2025

- 11 -